# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| STEVEN BOYD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 09 C 6856 |
| | ) |
| MATTHEW ALCOKE and | ) |
| MARK WALLSCHLOEGER, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Steven Boyd, a federal prisoner, has filed a *pro se* action against FBI agents Matthew Alcoke and Mark Wallschloeger pursuant to *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Boyd alleges that Alcoke and Wallschloeger used excessive force on him during the course of his arrest on December 15, 2008. Specifically, Boyd contends that the agents shot him without justification and then beat him while he was lying on the ground.

Alcoke has moved to dismiss Boyd's claim concerning the shooting pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the Court grants Alcoke's motion.

## Background

Boyd pled guilty to robbing a bank in Chicago on December 15, 2008 and attempting to escape from custody on that same date. In his amended complaint, Boyd alleges that after a brief foot chase following the robbery, Alcoke and Wallschloeger

apprehended him, handcuffed him, and placed him in the back seat of an FBI minivan. The agents then left Boyd in the minivan unattended, with the keys in the ignition. Boyd was able to slip out of his handcuffs, move into the front seat of the minivan, lock the doors, and put the vehicle into gear.

Boyd alleges that he backed up the minivan several feet but could not go further because he was blocked by another vehicle, which he struck with the minivan. He then drove forward, but there was a concrete barrier blocking the way, which he also struck. Boyd alleges that he then put the minivan into reverse and backed up several feet. At that point, Boyd alleges, he was shot in the chest through the side window of the minivan by one of the agents. Boyd alleges that at this point, "the vehicle was still in reverse, but blocked in and neither agent was behind the vehicle nor [were] any other individual, so there was no immediate threat of serious harm" to the agents or others. Am. Compl. at 2-3 (internal quotation marks omitted). Boyd alleges that he then unlocked the doors to the van and was taken out and restrained on the ground, "where either agent Alcoke or agent Wallschloeger struck me in the head with a firearm." *Id.* at 3. Boyd alleges that both the shooting and the beating constituted excessive force violative of his Fourth Amendment rights.

Judge David Coar presided over Boyd's criminal case. Certain matters addressed during Boyd's sentencing are relevant to determination of the pending motion to dismiss.[1] In particular, there was a dispute at Boyd's sentencing over

---

[1] Boyd specifically refers to the sentencing in his amended complaint and contends that it does not bar his shooting claim. Under the circumstances, it is appropriate for the Court to consider the submissions by the government and Boyd made in connection with the sentencing as well as the findings that Judge Coar made.

2

whether the Sentencing Guidelines' enhancement for "reckless endangerment during flight," see U.S.S.G. § 3C1.2, should apply in determining his Guidelines offense level. Boyd argued that the enhancement did not apply; the government argued that it did. See Mot. to Dismiss, Exs. 3 & 4 (sentencing memoranda). Specifically, the government argued that when Boyd attempted to drive away, he "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer," as required for the reckless endangerment enhancement to apply. See id., Ex. 4 at 4. Boyd argued that he did not strike or endanger anyone. See id., Ex. 3 at 4.

After considering the evidence, Judge Coar found that the government had proven the necessary factual predicate for imposition of the reckless endangerment enhancement. See id., Ex. 5 at 6 (sentencing hearing transcript). Judge Coar concluded that the enhancement did not apply to Boyd's bank robbery conviction because it occurred during his attempted escape, which Judge Coar concluded was not part of the robbery. See id. at 6-7. Judge Coar found, however, that the reckless endangerment enhancement applied to Boyd's escape conviction. Id. at 7. This resulted in an enhanced Sentencing Guidelines offense level and a higher advisory Guidelines sentencing range.

Alcoke has moved to dismiss Boyd's unlawful shooting claim. He argues that a finding in Boyd's favor on that claim would be inconsistent with Judge Coar's application of the reckless endangerment enhancement and that as a result, the claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

The Court previously dismissed the unlawful shooting claim based on *Heck* when it reviewed Boyd's original complaint. Boyd nonetheless included the claim in his amended complaint. In his motion, Boyd argues that the Court should again dismiss the claim. The Court now reconsiders whether it appropriately dismissed the claim.

**Discussion**

To prevail on his excessive force claim involving the shooting, Boyd must prove that it was objectively unreasonable for the agent to shoot him in light of the circumstances that existed at the time. *See, e.g., Graham v. Connor*, 490 U.S. 386, 395 (1989). A law enforcement officer is authorized to use deadly force against a suspect who is in the process of escaping if the officer has "probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). Alcoke argues that Boyd's contention that the shooting constituted excessive force is inconsistent with Judge Coar's determination at the sentencing that Boyd's actions immediately prior to the shooting amounted to reckless endangerment of others.

In *Heck*, the Court held that to recover damages for a violation of constitutional rights consisting of conduct "whose unlawfulness would render a conviction or sentence invalid," a plaintiff must prove that the conviction or sentence has been overturned, expunged, or otherwise declared invalid. *Heck*, 512 U.S. at 487-88. The purpose of this rule is to prevent the use of a civil suit to collaterally attack a criminal conviction. *Id.* at 484.

Boyd's sentence has not been overturned. For this reason, the question for the

4

Court is whether Boyd's allegation that the shooting amounted to excessive force would imply the invalidity of his sentence. The Court again concludes that the answer is yes.

Although a judge's calculation of the Sentencing Guidelines range is no longer determinative of a federal criminal defendant's sentence, the Guidelines continue to play a significant role in the sentencing process. The sentencing judge must treat the Guidelines as "the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). The judge "must 'begin all sentencing proceedings by correctly calculating the applicable Guideline range'; failure to do so is a 'significant procedural error.'" *United States v. Gibbs*, 578 F.3d 694, 695 (quoting *Gall*, 552 U.S. at 49, 51). Indeed, if a reviewing court determines that the sentencing judge incorrectly calculated the Guidelines range, a remand for resentencing is required, unless there is "reason to believe that the error in no way affected the district court's selection of a particular sentence." *United States v. Farmer*, 543 F.3d 363, 375 (7th Cir. 2008).

In this case, it is clear that Judge Coar's imposition of the reckless endangerment enhancement affected his choice of the appropriate sentence. Judge calculated the advisory Guidelines range as seventy to eighty-seven months. Mot. to Dismiss, Ex. 5 at 18. He determined, however, that Boyd's criminal history category overstated his actual criminal history and thus decided to consider an advisory Guidelines range of forty-six to fifty-seven months. *Id.* at 27. Judge Coar imposed a sentence of seventy-one months, which was higher than the revised Guidelines range. He did so specifically due to Boyd's reckless endangerment of others:

> [F]or purposes of sentencing I'm going to sentence you as if the criminal history was a 3 . . . . [Offense level] 21, [criminal history category] 3 would be 46 to 57 months.

5

> I agree with the government that I think your – what you did when you tried to escape from that car was not only stupid, it was dangerous. It was dangerous. I don't think you ought to get a pass on that. It's one thing to say that escape is not a crime of violence, but the way you tried to escape, I think did put a lot of people at risk. And so I'm going to increase the sentence above what a 21, 3 would have yielded because of what you did.
>
> You were – not only were you in the van, you slipped your handcuffs. You had on leg irons at the time. Now, how you purported to drive the van in a congested area with leg irons on and two armed FBI agents outside the car and not realize that that was dangerous is beyond me. And maybe it was just a fleeting thought, I need to get away. Maybe that's all you thought about. But people who make those kinds of decisions are dangerous people. If you're going to say I'm going to take this van and I'm going to with these leg irons on try to drive away, drive down the street on north Michigan Avenue, no less, during the holiday season, that's dangerous. That's dangerous.
>
> So having said all that, I think that that needs to be reflected in the sentence also. So I'm going to sentence you to 71 months.

*Id.* at 27-28.

"[W]here success in a prisoner's § 1983 damages action would implicitly question the validity of conviction *or duration of sentence*," the action is barred under *Heck* unless the prisoner first obtains an order overturning the conviction or sentence. *Muhammad v. Close*, 540 U.S. 749, 751 (2004) (emphasis added). *See also Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005). *Heck* applies to *Bivens* actions just as it applies to section 1983 suits. *See, e.g., Case v. Milewski*, 327 F.3d 564, 569 (7th Cir. 2003). Given the central role that Judge Coar's application of the reckless endangerment enhancement played in his determination of Boyd's sentence, the Court again concludes that a verdict in Boyd's favor on his claim concerning the shooting would imply the invalidity of his sentence. That claim is therefore barred by *Heck*.

**Conclusion**

For the reasons stated above, the Court grants defendant Alcoke's motion to dismiss plaintiff's unlawful shooting claim [docket no. 55].[2] Plaintiff's claim concerning his shooting at the hands of the defendant agents is dismissed. What remains is his claim concerning his alleged beating after he was shot. Alcoke is directed to answer that claim by no later than June 6, 2011. Because Wallschloeger's response to the complaint is due on July 1, 2011, the case is set for a status hearing on July 6, 2011 at 9:00 a.m. Defendants' counsel is to appear in person and is directed to make arrangements for plaintiff to participate by telephone.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: May 6, 2011

---

[2] Even though Wallschloeger was only recently served with process and has not yet responded to the complaint, this ruling also applies to him.