# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| STEVEN D. BOYD, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 09 C 6856 |
| MATTHEW R. ALCOKE AND MARK WALLSCHLAEGER, | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM REGARDING PLAINTIFF'S PRO SE STATUS

MATTHEW F. KENNELLY, District Judge:

During his opening statement at trial yesterday, *pro se* plaintiff Steven Boyd asserted his belief that he was destined to lose this case because he was proceeding *pro se* without a court-provided attorney. The Court previously denied Mr. Boyd's request to recruit counsel for him. Because Mr. Boyd raised the issue during trial, the Court issues this memorandum to elaborate further on its reasoning for denying Mr. Boyd's counsel request and to explain its management of the case in light of Mr. Boyd's *pro se* status.

"There is no constitutional or statutory right to counsel in federal civil cases. Nevertheless, the district court has discretion under 28 U.S.C. § 1915(e)(1) to request counsel for an indigent litigant." *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010) (citing *Pruitt v. Mote*, 503 F.3d 647, 654, 656 (7th Cir. 2007) (en banc); *Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006)). When evaluating a request by a *pro se* plaintiff for recruitment of counsel, a court must ask: "(1) has the indigent plaintiff made

a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt*, 503 F.3d at 654.

The fact that a case would be more effectively presented through counsel is not the standard; as the Seventh Circuit stated in *Pruitt*, "if that were the test, district judges would be required to request counsel for every indigent litigant." *Id.* at 655. Instead, the relevant question is "whether the difficulty of the case -- factually and legally -- exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge and the jury himself." *Id.* The Court "must consider both halves of this equation -- the difficulty of the case and the competence of the litigant." *Bracey v. Grondin*, 712 F.3d 1012, 1016 (7th Cir. 2012).

Although there are no fixed requirements for determining a plaintiff's competence to present his case, a Court may consider factors such as plaintiff's "literacy, communication skills, educational level, and litigation experience." *Id.* at 655. There are likewise no set requirements when considering the complexity of the case. A court should take into account both the subject matter involved and the plaintiff's ability to attend to the tasks of litigation such as gathering evidence, preparing and responding to motions, and trial practice. *Id.* at 655-56.

Turning first to Mr. Boyd's abilities, the Court continues to find him to be an intelligent and articulate person who is able to advocate his case in a straightforward way. The Court previously noted that Mr. Boyd's filings properly addressed the relevant issues, applied appropriate law to fact, and made coherent arguments. Mr. Boyd won some motions and lost others, but the Court has at all times been fully able to

2

understand the arguments he presented, and those arguments were of a high quality for a *pro se* party.

The record does not disclose Mr. Boyd's education. However, his writing and reasoning abilities are of good quality. In addition, the Court had a great deal of contact with Mr. Boyd during the pretrial phase of the case via numerous telephone status hearings and has had the opportunity to observe Mr. Boyd in action at the pretrial conference and during the course of the trial. The Court's observations of Mr. Boyd have reinforced its original belief that Mr. Boyd is an intelligent and articulate person who is fully capable of presenting his claim and contentions in a clear and cogent manner.

The Court has kept a vigilant watch on case, especially at trial, to ensure that Mr. Boyd's *pro se* status does not adversely impact the integrity of the proceedings. The Court has worked with both parties in all aspects of preparation for and conduct of the trial, including preparation of the jury questionnaire, the process of jury selection, and the introduction of evidence. The Court has carefully explained each step of the trial proceedings to Mr. Boyd to make sure that he understood what the process involves and what is required of him, and the Court has provided sufficient time for Mr. Boyd to prepare for each task. Among other things, the Court advised Mr. Boyd to create an outline so that he could organize his trial testimony, and the Court also suggested, after Mr. Boyd's appearance at the pretrial conference, that he wear his best clothing to court to put his best foot forward to the jury. Mr. Boyd adopted this suggestion and has appeared at trial in a dress shirt, tie and slacks at trial. He has comported himself in a professional way at all times when presenting his case to the jury.

In addition, recognizing that Mr. Boyd lacked familiarity with the rules of evidence, the Court spent a significant amount of time reviewing defendants' proposed exhibits prior to trial and issued a three page memorandum raising admissibility concerns. And during the trial, the Court has raised objections *sua sponte* to certain questions and arguments by defense counsel that the Court believed fell outside the bounds of admissible evidence or proper argument.

Turning next to the issue of the complexity of the case, the case boils down to a straightforward "swearing contest" between the parties, all focused on a single event that took place over a matter of a few moments. Specifically, Mr. Boyd contends that after he was re-handcuffed following an incident where he attempted to escape from the arresting agents, defendant Matthew Alcoke struck him on the head with a gun without proper cause, while defendant Mark Wallschlaeger stood idly by and did nothing to stop Mr. Alcoke. Mr. Boyd was able to articulate his claim and his contentions clearly and simply during his opening statement to the jury and during his testimony.

The case is a simple and straightforward one in which all of the available information is readily accessible to both sides; no crucial evidence is missing or claimed to be missing; and there are no complicated disputes. It has been established during the trial, to the satisfaction of both parties, that the event at issue (Mr. Boyd's attempted escape and his re-arrest just prior to the alleged assault) was not captured on videotape. Relevant evidence relating to Mr. Boyd's medical treatment has also been fully available to both sides and has been presented to the jury via testimony and exhibits. Mr. Boyd has not disputed the substance of any of these surrounding events;

4

what *is* disputed focuses on the events in the moments following his re-arrest, and Mr. Boyd has been able to present his side of those events fully and fairly.

Defendants' use of medical records in evidence does not suggest that the case is complex. There are no disputed medical issues involved in the case. Rather, defendants have offered these records simply to show that Mr. Boyd did not complain of an injury to his head – a point that Mr. Boyd does not dispute. Rather, he has contended that the medical personnel were asking about traumatic head injuries, which is not what he considered the alleged assault to be. Mr. Boyd has also explained during his testimony that he did not initially complain because his prior experiences with law enforcement led him to believe that it was common to be assaulted during arrests and that this was something he just had to live with.

For all of these reasons, the Court reaffirms its earlier determinations that Mr. Boyd is competent under the circumstances to litigate the case himself, without counsel.

                                                MATTHEW F. KENNELLY
                                                United States District Judge

Date: August 14, 2013